# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-2326

RYAN KLAASSEN, *et al.*,

               *Plaintiffs-Appellants*,

*v.*

TRUSTEES OF INDIANA UNIVERSITY,

               *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:21-CV-238 DRL — **Damon R. Leichty**, *Judge*.

_____

DECIDED AUGUST 2, 2021

_____

Before EASTERBROOK, SCUDDER, and KIRSCH, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Starting next semester, all students at Indiana University must be vaccinated against COVID-19 unless they are exempt for religious or medical reasons. Exempt students must wear masks and be tested for the disease twice a week. Eight students contend in this suit that these conditions of attendance violate the Due Process Clause of the Constitution's Fourteenth Amendment. The district court denied plaintiffs' request for a preliminary

injunction, 2021 U.S. Dist. LEXIS 133300 (N.D. Ind. July 18, 2021), and they ask us to issue an injunction pending appeal.

Given *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), which holds that a state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2. Plaintiffs assert that the rational-basis standard used in *Jacobson* does not offer enough protection for their interests and that courts should not be as deferential to the decisions of public bodies as *Jacobson* was, but a court of appeals must apply the law established by the Supreme Court.

Plaintiffs invoke substantive due process. Under *Washington v. Glucksberg*, 521 U.S. 702, 720–22 (1997), and other decisions, such an argument depends on the existence of a fundamental right ingrained in the American legal tradition. Yet *Jacobson*, which sustained a criminal conviction for refusing to be vaccinated, shows that plaintiffs lack such a right. To the contrary, vaccination requirements, like other public-health measures, have been common in this nation.

And this case is easier than *Jacobson* for the University, for two reasons.

First, *Jacobson* sustained a vaccination requirement that lacked exceptions for adults. See 197 U.S. at 30. But Indiana University has exceptions for persons who declare vaccination incompatible with their religious beliefs and persons for whom vaccination is medically contraindicated. The problems that may arise when a state refuses to make accommodations therefore are not present in this case. Indeed, six of the eight plaintiffs have claimed the religious exception, and a seventh is eligible for it. These plaintiffs just need to wear

masks and be tested, requirements that are not constitutionally problematic. (The eighth plaintiff does not qualify for an exemption, which is why we have a justiciable controversy.)

Second, Indiana does not require every adult member of the public to be vaccinated, as Massachusetts did in *Jacobson*. Vaccination is instead a condition of attending Indiana University. People who do not want to be vaccinated may go elsewhere. Many universities require vaccination against SARS-CoV-2, but many others do not. Plaintiffs have ample educational opportunities.

Each university may decide what is necessary to keep other students safe in a congregate setting. Health exams and vaccinations against other diseases (measles, mumps, rubella, diphtheria, tetanus, pertussis, varicella, meningitis, influenza, and more) are common requirements of higher education. Vaccination protects not only the vaccinated persons but also those who come in contact with them, and at a university close contact is inevitable.

We assume with plaintiffs that they have a right in bodily integrity. They also have a right to hold property. Yet they or their parents must surrender property to attend Indiana University. Undergraduates must part with at least $11,000 a year (in-state tuition), even though Indiana could not summarily confiscate that sum from all residents of college age.

Other conditions of enrollment are normal and proper. The First Amendment means that a state cannot tell anyone what to read or write, but a state university may demand that students read things they prefer not to read and write things they prefer not to write. A student must read what a professor assigns, even if the student deems the books heretical, and

must write exams or essays as required. See, e.g., *Fleischfresser v. Directors of School District 200*, 15 F.3d 680, 687 (7th Cir. 1994); *Wood v. Arnold*, 915 F.3d 308 (4th Cir. 2019); *Smith v. Board of School Commissioners*, 827 F.2d 684 (11th Cir. 1987). A student told to analyze the role of nihilism in Dostoevsky's *The Possessed* but who submits an essay about Iago's motivations in *Othello* will flunk.

If conditions of higher education may include surrendering property and following instructions about what to read and write, it is hard to see a greater problem with medical conditions that help all students remain safe when learning. A university will have trouble operating when each student fears that everyone else may be spreading disease. Few people want to return to remote education—and we do not think that the Constitution forces the distance-learning approach on a university that believes vaccination (or masks and frequent testing of the unvaccinated) will make in-person operations safe enough.

The motion for an injunction pending appeal is denied.